| | | |
|---|---|---|
| CHARLES N.J. RUGGIERO, | : | |
| | : | CASE NO.: 3:23-cv-00191-JAM |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| PAUL D. GREELEY, | : | |
| | : | |
| Defendant. | : | March 17, 2023 |

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS OR STAY

Defendant Paul D. Greeley, by and through undersigned counsel, submits this Memorandum of Law in support of his Motion to Dismiss or Stay this case.

## INTRODUCTION

Plaintiff Charles N.J. Ruggiero ("Ruggiero") and Defendant Paul D. Greeley ("Greeley") were law partners for decades at the firm Ohlandt, Greeley, Ruggiero & Perle, LLP ("OGRP"). For more than twenty years, they were the only "Tier 1" partners under the terms of the partnership agreement. After strains developed in their relationship, Ruggiero formed a competing firm in March 2022 and has been practicing there since June. But he insists he never withdrew from OGRP. The parties are actively engaged in two prior-pending lawsuits in Superior Court over their breakup. Ruggiero filed this third lawsuit in federal court, claiming that Greeley is violating federal trademark law by not dropping "Ruggiero" from OGRP's name.

But this is not a trademark dispute. The rights to the firm's name are controlled by OGRP's Limited Liability Partnership Agreement (the "Partnership Agreement"). As Ruggiero admits, the issue is governed by Section 1.1, which provides: "The name of the LLP shall be <u>OHLANDT, GREELEY, RUGGIERO & PERLE, LLP</u>. The name of a partner will be deleted ***upon withdrawal***

*from the LLP*. The LLP may continue to use the name of a deceased, retired, or disabled partner without compensation." Compl. ¶ 28. Section 1.1 is clear that OGRP does <u>not</u> have to drop Ruggiero's name unless he has withdrawn from the firm, and Ruggiero expressly denies that he has withdrawn. Compl. ¶ 5 (disputing contention in prior-pending state court litigation that Ruggiero withdrew from OGRP); *id.* ¶ 28 (same).

In short, this is not a trademark case. It is a contract dispute, and the central issues are whether Ruggiero manifested an express will to withdraw from OGRP through his statements and actions, and whether Ruggiero had the authority to unilaterally "expel" Greeley from OGRP, as he claims he did. Neither issue will be determined based on federal trademark law. Instead, both issues will turn on the interpretation of the Partnership Agreement, which is a question of state law. Where, as here, a plaintiff's federal claim masks an underlying state law issue, courts have held that federal jurisdiction is lacking. Because the substance of Ruggiero's claim is based on state, not federal, law, the Court should dismiss this case for lack of jurisdiction. *See* Fed. R. Civ. P. 12(b)(1).

Second, even if the Court were to conclude that jurisdiction exists over these claims, the Court still should dismiss this case, or at a minimum stay it, under the *Colorado River* doctrine. Under this doctrine, when a state and federal court simultaneously possess jurisdiction over parallel proceedings, the federal court may dismiss the suit "on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of the litigation." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976). This case fits squarely within the doctrine.

This is the *third* lawsuit filed between the parties regarding their rights and obligations with respect to OGRP. The other two suits were filed first and are pending in the Superior Court.

Greeley and OGRP filed the first lawsuit in August 2022, asserting claims against Ruggiero and a former OGRP partner for breach of contract, breach of fiduciary duties, violation of CUTPA, and other torts. *See Ohlandt, Greeley, Ruggiero & Perle, LLP, et al. v. Ruggiero, et al.*, FST-CV22-6058185-S. Ruggiero filed the second lawsuit in September, seeking judicial dissolution of OGRP, appointment of a receiver, and a declaratory judgment that Greeley cannot use OGRP's website or domain address, or the names "Ohlandt" and "Perle." *Ruggiero, et al. v. Greeley, et al.*, FST-CV22-6058223-S. Both sides have moved to dismiss, arguing, among other things, lack of standing. The parties already are engaged in jurisdictional discovery, and the Superior Court already scheduled an evidentiary hearing on these issues for early May.

Critically, the same issues that this Court would need to resolve in this case are already before the Superior Court in both prior-pending state lawsuits. Specifically, at the heart of the state court lawsuits are: (1) whether Ruggiero voluntarily withdrew from OGRP, and (2) whether Ruggiero had the authority under the Partnership Agreement to unilaterally "expel" Greeley from OGRP. Those are the same issues this Court would need to decide to determine whether OGRP and Greeley must drop "Ruggiero" from OGRP's name. Under these circumstances, the *Colorado River* factors weigh heavily in favor of dismissing this case, or at a minimum staying it, as a matter of comity and in deference to the prior-pending Superior Court proceedings.

## I.  FACTUAL BACKGROUND

This is the third lawsuit arising from the business divorce of Greeley and Ruggiero. The relevant facts underlying this lawsuit are set forth below.

### A.  The History of OGRP

OGRP is a decades-old law firm based in Stamford, Connecticut that provides intellectual property counseling and services to its clients. *See* Declaration of Paul D. Greeley ("Greeley

Decl."), attached hereto as **Exhibit A**, ¶ 2.[1] At one time, there were four named partners: Greeley, Ruggiero, John F. Ohlandt, and E. Gabriel Perle. *Id.* ¶ 3. Ohlandt and Perle retired many years ago, and both are now deceased. *Id.* In 1998, Ohlandt, Greeley, Ruggiero, and former partner David Koffsky (now deceased) entered into the Partnership Agreement.[2] *Id.* ¶ 5. Greeley has been the Managing Partner of OGRP since its inception. *Id.* ¶ 4.

B.    **Ruggiero Stopped Paying into OGRP.**

Under the Partnership Agreement, each partner is required to pay into OGRP a share of the revenue they receive from clients they originate, pursuant to an allocation formula. *See* **Ex. 1** to Greeley Decl.; *see also* Greeley Decl. ¶¶ 6-7. In recent years, Ruggiero stopped paying his share of revenue and stopped covering his share of OGRP's expenses. Greeley Decl. ¶¶ 8-10. Over time, Ruggiero's outstanding debt for fees and expenses ballooned to about $1.5 million. *Id.* ¶ 9. Ruggiero ignored OGRP's and Greeley's repeated demands for payment and refused to pay his outstanding debt. *Id.* ¶ 11.

C.    **Ruggiero Formed a Competing Firm and
        Tried to Drive OGRP Out of Business.**

Against this backdrop and the strain it caused on Ruggiero's and Greeley's relationship, it became clear that Ruggiero needed to leave the firm. Compl. ¶ 3; Greeley Decl. ¶ 15. At the request

---

[1] When issues of jurisdiction are raised, parties may cite evidence outside of the pleadings, including evidence of which courts can take judicial notice. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (court may "refer to evidence outside the pleadings" when resolving a motion to dismiss for lack of subject matter jurisdiction); *Tequila Cuervo la Rojena, S.A. de C.V. v. Jim Beam Brands Co.*, No. 10 CIV. 0203 SHS, 2011 WL 407938, at *1 (S.D.N.Y. Feb. 8, 2011) (court "has discretion to look beyond the pleadings when" considering subject matter jurisdiction); *United States v. Jean-Marie*, No. 3:23-CR-00036 (KAD), 2023 WL 2384116, at *2 (D. Conn. Mar. 6, 2023) (court took judicial notice of Superior Court docket when assessing facial propriety of party's notice of removal to federal court).

[2] The Partnership Agreement with amendments is attached as **Exhibit 1** to the Declaration of Paul Greeley.

of Ruggiero's then-counsel, Greeley outlined proposed terms in February 2022 for Ruggiero's departure from OGRP. Greeley Decl. ¶ 16. Ruggiero did not respond to that proposal. *Id.* Instead, as OGRP and Greeley later learned, Ruggiero instead formed a competing firm in March 2022 under the name Ruggiero, McAllister and McMahon, LLP ("RMM"). *Id.* ¶ 17; *see also* Compl. ¶ 3. He solicited other OGRP lawyers and staff to leave OGRP and join his competing firm, including the other two named partners in RMM, Terrance McAllister and Ned McMahon, both of whom were partners in OGRP before leaving to open the competing firm. *Id.* ¶ 18.

Ruggiero then went out of his way to try to destroy OGRP and harm Greeley. On April 7, 2022, Ruggiero sent Greeley a purported "expulsion" letter, claiming that he had the authority to unilaterally expel Greeley from the partnership. *See* ECF No. 16-4, at 2 (Ruggiero's motion to dismiss Greeley's state court complaint, citing his purported expulsion of Greely from OGRP). He then emailed OGRP's personnel and told them that Greeley had been expelled from the firm and that the firm was dissolving. Greeley Decl. ¶ 21. Ruggiero also falsely claimed that he was the partner in charge of the "dissolution" of OGRP. *Id.* ¶ 19.

Ruggiero contacted clients and urged them to leave OGRP and retain his new, competing firm. *Id.* ¶ 20, 22-23. He leased office space for his new firm in the same building complex as OGRP. *Id.* ¶ 21. He took unauthorized control of OGRP's website and inserted a banner on the homepage stating that the firm was dissolving and that clients could contact Ruggiero at RMM. *Id.* He also removed OGRP's attorneys from OGRP's U.S. Patent and Trademark Office ("USPTO") Customer Number, hindering their ability to provide essential services to clients. *Id.* ¶ 24.

Not surprisingly, Ruggiero's actions have wreaked havoc on OGRP and Greeley. Ruggiero's announcements left clients, attorneys, and staff with the false impression that OGRP

was going out of business. *Id.* ¶ 22. He caused confusion and concern among staff members about their job security. *Id.* His actions—not Greeley's or OGRP's—have caused confusion among clients about whom to contact, or pay, for their legal services. *Id.* Indeed, Greeley has uncovered evidence that Ruggiero has urged clients to pay him directly for OGRP invoices, in at least one case urging a client to do so quickly in case the Superior Court were to appoint a receiver for the firm. *Id.* ¶ 23.

Through it all, Greeley has single-handedly kept OGRP afloat. *Id.* ¶ 27. He has continued to pay OGRP his required fee allocation, continued to pay OGRP's operating expenses, including expenses that were incurred by Ruggiero, and continued to run the firm as its Managing Partner. *Id.*

**D.      The Connecticut State Court Lawsuits**

OGRP and Greeley filed a lawsuit in August 2022 to hold Ruggiero accountable for his actions. *See Ohlandt, Greeley, Ruggiero & Perle, LLP et al. v. Ruggiero et al.*, FST-CV22-6058185-S. They assert claims for, *inter alia*, breach of contract, breach of fiduciary duties, violations of CUTPA, and other torts by Ruggiero and former OGRP partner Ned McMahon. *See* ECF No. 16-1 (Greeley state court complaint). Ruggiero has moved to dismiss most of the claims in the lawsuit. *See* ECF No. 16-4 (Ruggiero motion to dismiss). He argues that he "expelled" Greeley from OGRP before OGRP and Greeley sued, and that, he claims, removed Greeley's authority to cause OGRP to file suit to recover the $1.5 million that Ruggiero owes the firm. Ruggiero argues further that, under his view of the Partnership Agreement, he cannot be sued without his consent. *Id.* OGRP and Greeley obviously disagree and have opposed Ruggiero's motion to dismiss. *See* FST-CV22-6058185-S, Dkt. No. 123.00.

In September 2022, Ruggiero filed his own lawsuit, seeking the judicial dissolution of OGRP, the appointment of a receiver for the firm, and a declaratory judgment that Greeley does not have the right to use OGRP's website, OGRP's domain address, or the names "Ohlandt" and "Perle." *See Ruggiero et al. v. Greeley et al.*, FST-CV22-6058223-S. Greeley moved to dismiss this second-filed lawsuit on the ground that Ruggiero lacks standing to assert these claims because he withdrew from OGRP long before filing the lawsuit. *See* FST-CV22-6058223-S, Dkt. No. 106.00. Ruggiero denies that he withdrew from OGRP and has opposed the motion. FST-CV22-6058223-S, Dkt. No. 115.00.

Because the parties' motions in both state court cases raise issues of standing, which implicates the court's subject matter jurisdiction, the parties agreed to stay all proceedings except jurisdictional discovery. *See* ECF No. 16-3 (Jurisdictional Discovery Schedule and related Court Order). The parties are actively engaged in jurisdictional discovery, have exchanged written discovery requests, produced significant volumes of documents, and already begun taking depositions. *See id.* at 2. The Superior Court has scheduled a three-day evidentiary hearing on the jurisdictional issues beginning May 3, 2023. *Id.*

Despite Ruggiero's insistence that this case is "separate" and "distinct" from the already pending state court cases, the reality is that they overlap significantly and the issues that are central to each case are identical. For example, in his Memorandum of Law in support of his motion for a temporary restraining order or preliminary injunction in this case, Ruggiero argues:

> Greeley cannot continue his law practice as OGRP, a firm from which he was expelled as a partner and which is in dissolution and wind-down. Greeley, however, refuses to accept this reality and, instead, has continued to practice law using the OGRP acronym and the Ohlandt, Greeley, Ruggiero & Perle name, including Ruggiero's own name, unethically and without Ruggiero's permission.

Mem. of Law at 6 (ECF No. 5-2). Those issues are at the heart of this case. They also are at the

heart of both state court lawsuits, where the parties are currently engaged in jurisdictional discovery related to these very questions, namely whether the Partnership Agreement gave either partner authority to unilaterally expel the other from the partnership and whether Ruggiero withdrew from the partnership by, among other things, opening a competing firm and moving his practice to it. In other words, there is nearly complete overlap between the issues raised in this case and those already before the Superior Court in the two prior-pending state court lawsuits.

## E. Ruggiero Files this Third Lawsuit.

Despite these issues already being squarely before the Superior Court in two prior-pending lawsuits, Ruggiero has now brought the same underlying issues to this Court in a *third* lawsuit. In doing so, he has needlessly duplicated litigation and violated the spirit, and perhaps the letter, of the stay imposed by the Superior Court and agreed to by the parties. Though Ruggiero slaps a "Lanham Act" label on his claim, the underlying questions that this Court would need to resolve to decide this case are state law contract issues. The underlying questions – whether Ruggiero withdrew from OGRP and whether he had the authority to "expel" Greeley from the firm – will be determined based on the interpretation of the Partnership Agreement. Federal trademark law has no bearing on either question.

## II. DISCUSSION

This case should be dismissed for two reasons. First, this is not a federal trademark case. It is a contract dispute governed by state law. Whether Greeley has the right to continue using the "Ruggiero" name in connection with OGRP depends on the rights given by the Partnership Agreement. The two central issues are whether Ruggiero withdrew from OGRP and whether he could "expel" Greeley from the firm. Both issues turn on the interpretation of the Partnership Agreement and the application of the Connecticut Uniform Partnership Act. Because state law

governs, there is no basis for federal jurisdiction, and the Court should dismiss the case under Rule 12(b)(1). Second, even if the Court were to find a basis of jurisdiction, it still should dismiss the case, or at a minimum stay it, under the *Colorado River* doctrine, because the central issues are already before the Superior Court in not one but two prior-pending state court lawsuits.

### A.     The Court Should Dismiss This Case for Lack of Jurisdiction.

Despite being dressed up as a federal Lanham Act case, the substantive issues in this case will be decided based on the interpretation of the Partnership Agreement, which governs the parties' rights and obligations with respect to the firm, its name, and whether either party withdrew or was expelled from the firm.

### 1.     The Right to the Firm's Name is Governed by Contract.

The right to the firm's name is governed by Section 1.1 of OGRP's Partnership Agreement, which provides: "The name of the LLP shall be <u>OHLANDT, GREELEY, RUGGIERO & PERLE, LLP</u>. The name of a partner will be deleted ***upon withdrawal from the LLP***. The LLP may continue to use the name of a deceased, retired, or disabled partner without compensation." Partnership Agreement, **Ex. 1** to Greeley Decl. (second emphasis added). Section 1.1 is clear that OGRP has the right to continue using Ruggiero's name *unless* he has withdrawn from the firm.

Despite carrying the burden of proof, Ruggiero refuses to acknowledge that he withdrew from OGRP. *See* Compl. ¶ 5 (disputing contention in prior-pending state court litigation that Ruggiero withdrew from OGRP); *id.* ¶ 28 (same). The reason is simple: if he were to admit that he withdrew, it would be tantamount to admitting that he does not have standing to pursue the lawsuit he filed in Superior Court. Ruggiero tries to get around this by saying that OGRP and Greeley have argued in the prior-pending state court lawsuits that Ruggiero withdrew from OGRP. What

Ruggiero neglects to say, however, is that he has adamantly <u>denied</u> that he withdrew from OGRP. As the plaintiff in this case, Ruggiero bears the burden of proof.

No doubt recognizing this problem, Ruggiero offers an alternative argument. He argues that Greeley has no right to continue using the OGRP name because Ruggiero purportedly "expelled" him from the firm. Setting up a false Hobson's choice, Ruggiero argues that either he expelled Greeley from OGRP, in which case Greeley has no right to continue practicing as OGRP, or Ruggiero withdrew from OGRP, in which case Greeley has to drop "Ruggiero" from OGRP pursuant to § 1.1 of the Partnership Agreement. Compl. ¶¶ 4-5, 53.

Ruggiero's argument lacks merit. First, his claim that he had the power to unilaterally expel Greeley from the partnership relies on a tortured reading of the Partnership Agreement. It cannot be reconciled with the plain terms of the termination provision or the language of the surrounding provisions, and it ignores the obvious intent of the parties in creating the various mechanisms for termination and dissolution. These issues already have been briefed thoroughly in the prior-pending state court lawsuits. Second, the two scenarios that Ruggiero presents are not the only two possible outcomes. If, for example, a court were to conclude that Ruggiero had no power under the Partnership Agreement to expel Greeley from OGRP *and* that Ruggiero had not manifested an express will to withdraw from OGRP, then Ruggiero's "either or" scenario falls apart. In that situation, both Greeley and Ruggiero would remain partners in OGRP, and the name of the firm unquestionably would remain Ohlandt, Greeley, Ruggiero & Perle, LLP pursuant to Section 1.1 of the Partnership Agreement.

The most important thing about this entire discussion is that it demonstrates clearly that the central issues in this case are run-of-the-mill state law questions concerning the interpretation of a contract. The rights and obligations of the parties will be determined based upon the interpretation

of the Partnership Agreement and the application of that contract as interpreted to the underlying facts. None of those questions depend on federal trademark law.

## 2. Precedent Dictates that Federal Jurisdiction is Lacking where State Law Issues are Dressed Up as Federal Claims.

Where, as here, the issue raised by the Complaint will be determined based upon issues of state law rather than questions of federal law, courts have held that federal jurisdiction is lacking. In *International Armor & Limousine Co. v. Moloney Coachbuilders, Inc.*, 272 F.3d 912 (7th Cir. 2001), the Seventh Circuit faced a similar situation. In that case, the parties filed competing Lanham Act claims related to the use of the "Moloney" name in competing limousine businesses. *Id.* at 913. There, Earle Moloney sold his name and other assets to Moloney Coachbuilders but later started a new limousine business himself, reclaiming the "name and corporate history." *Id.* Earle Moloney's new business, International Armor, filed suit "seeking a declaratory judgment that [there was no Lanham Act violation] by making a confusingly false claim of origin." *Id.* In response, Moloney Coachbuilders countersued for, *inter alia*, Lanham Act violations. *Id.*

The Seventh Circuit saw the claims for what they really were, concluding: "The problem is simple: This is a contract dispute . . . . The contracts of 1986 and 1990 are *about* trademarks, so a claim under the Lanham Act may be derivative of the rights conferred. Whichever side owns the marks may use them, and whichever side does not own them is at risk under the Lanham Act as well as the law of contract." *Id.* at 914. Admonishing the parties for attempting to recast contract claims as federal trademark issues in an effort to keep the case in federal court, the Court wrote: "Instead of relying on the contract claims directly, they have tried to frame trademark issues that immediately vanish, a coat of water-soluble paint that washes away to reveal the contract dispute underneath. That disappearing-ink trick does not create federal jurisdiction; it simply *defines* artful pleading." *Id.* at 916. Finding the Lanham Act claims to be "a veneer laid over [a] state-law core,"

the Court held there was no federal jurisdiction. *Id.* at 917 ("We therefore treat this ownership dispute as what it is, a claim arising under the state law of contracts.").

Courts within the Second Circuit have reached similar conclusions when faced with state law issues dressed up as federal claims. In *Stancato v. Versace*, 94 CIV. 4192 (JFK), 1995 WL 437532, at *3 (S.D.N.Y. July 25, 1995), the Southern District of New York explained that "federal courts do not have subject matter jurisdiction in cases where a trademark is merely the subject matter of a contract dispute." The court held that it lacked federal subject matter jurisdiction over a Lanham Act claim where the disputed trademark rights were governed by a stock purchase agreement, and therefore ownership of the trademark was dependent on the common law governing contracts and fraud. *Id.* at *2-3; *see also Silverstar Enterprises, Inc. v. Aday*, 537 F. Supp. 236, 240 (S.D.N.Y. 1982) (federal court lacked jurisdiction over Lanham Act claim where party's interest in trademark name arose solely from a contractual relationship and party was "attempting to enforce its own rights under [a] License agreement," on the grounds that this was "a contract dispute and should be brought under a contract theory").

Other courts have held similarly. For example, in *RBM Techs., Inc. v. Lash*, No. CIV.A.04-10062-GAO, 2004 WL 1809867, at *2 (D. Mass. Aug. 13, 2004), the District of Massachusetts addressed similar tactics involving a claim under the Copyright Act. The parties' relationship was governed by a contract, which included provisions regarding ownership of any work performed by the defendant. The defendant removed the case from state to federal court asserting that the plaintiff's claims to ownership of a software program arose under the Copyright Act. *Id.* at *1. The Court remanded the case to state court because the crux of the issue was a contractual dispute, not a copyright dispute, and the claim could not be resolved without first resolving the contract issues:

> [Defendant's] reasoning is circular because he ignores the fact that his right to claim ownership *depends on an initial resolution of the underlying contract issue*. If, after

resolving the essential contract issue, the state court finds it necessary to examine federal copyright law to resolve the dispute, it would certainly be within the court's purview to do so.

*Id.* at *3 (emphasis added).

In the same way, here the right to use the "OGRP" name is governed by the Partnership Agreement, as discussed in detail above. Ruggiero's claim regarding the right, or lack thereof, to use his name in connection with Ohlandt, Greeley, Ruggiero & Perle, LLP cannot be resolved without an "initial resolution of the underlying contract issues," *id.*, meaning determining whether Greeley remains a partner of OGRP and has the right to continue practicing law as OGRP and whether Ruggiero withdrew from OGRP. These are matters of state law. Accordingly, federal subject matter jurisdiction is lacking, and this case should be dismissed.

### B.    The Court Should Dismiss This Case Under the *Colorado River* Doctrine.

Even if the Court were to conclude that there is a basis for federal jurisdiction for this case, the Court still should dismiss it under the *Colorado River* doctrine. *See Ferrara v. Munro*, 585 B.R. 269, 294 (Bankr. D. Conn. 2018) (where parallel case is pending in state court, "the appropriate analysis is found in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S. Ct. 1236, 47 L.Ed.2d 483 (1976)").

The *Colorado River* doctrine dictates that when state and federal courts simultaneously possess jurisdiction over parallel proceedings,[3] the federal court may dismiss the suit "on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of the litigation." *Colorado River*, 424 U.S. at 817. When evaluating these considerations, the Second Circuit has held that "a district court is required to

---

[3] "Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Ferrara*, 585 B.R. at 295.

weigh six factors, with the balance heavily weighted in favor of the exercise of jurisdiction." *Vill. of Westfield v. Welch's,* 170 F.3d 116, 121 (2d Cir. 1999) (internal quotations omitted).

The six factors are: (1) the assumption of jurisdiction by either court over any res or property; (2) the inconvenience of the federal forum; (3) the avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether state or federal law supplies the rule of decision; and (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction. *Ferrara,* 585 B.R. at 295.

Courts in this District have often dismissed or stayed proceedings where, as here, multiple factors weigh in favor of abstention. *Ferrara,* 585 B.R. at 295 (granting defendant's motion to dismiss on the basis of abstention "[b]ecause several facts weigh heavily in favor of abstention under *Colorado River*"); *Server v. Nation Star Mortg., LLC,* No. 3:16-CV-1582 (VLB), 2017 WL 3097493, at *7 (D. Conn. July 20, 2017) (abstaining on *Colorado River* grounds because two factors weighed heavily in favor of abstention and other pertinent considerations – deterrence of forum shopping and abuse of the judicial process – also weighed in favor of abstention); *Bradley v. Kelly*, 479 F. Supp. 2d 281, 286 (D. Conn. 2007) (agreeing that *Colorado River* dictated abstention where four of the doctrine's six factors favored abstention). The *Colorado River* factors weigh heavily in favor of abstention in this case.

*First Factor.* Although neither court has assumed jurisdiction over any res or property, Ruggiero has asked the Superior Court in his second-filed state court lawsuit to take control of *all assets* of OGRP. *See* ECF No. 16-2 (Ruggiero's state court complaint), at Prayer for Relief (asking for receiver to "manage the assets" and for court to "enjoin[] Greeley from using the Firm name"). The first factor, therefore, weighs slightly in favor of abstention.

*Second Factor.* The second factor – the inconvenience of the federal forum – is neutral to slightly in favor of abstention. The federal forum is not geographically inconvenient, but it is inconvenient in the sense that it represents duplicative litigation, cannot be consolidated with the two prior-pending state court lawsuits, and would require the parties to engage in duplicative litigation – repeating the same discovery, for example – in two different jurisdictions. That duplication represents an inconvenience.

*Third Factor.* The third factor – the avoidance of piecemeal litigation – weighs heavily in favor of abstention. Despite Ruggiero's insistence that this case is "separate" and "distinct" from the already pending state court cases, the reality is that they raise identical issues. The overlap is exemplified by Ruggiero's argument in support of his motion for a temporary restraining order or preliminary injunction, in which he asserts:

> Greeley cannot continue his law practice as OGRP, a firm from which he was expelled as a partner and which is in dissolution and wind-down. Greeley, however, refuses to accept this reality and, instead, has continued to practice law using the OGRP acronym and the Ohlandt, Greeley, Ruggiero & Perle name, including Ruggiero's own name, unethically and without Ruggiero's permission.

Mem. of Law at 6 (ECF No. 5-2). That issue is at the heart of Ruggiero's own lawsuit in Superior Court, in which he is trying to judicially dissolve OGRP, appoint a receiver for it, and get a declaratory judgment that Greeley must stop practicing law using the OGRP name, website, and domain address. ECF No. 16-2 (Ruggiero state court complaint). That issue is also the central argument that Ruggiero makes in his motion to dismiss the first state court lawsuit that OGRP and Greeley filed. In arguing that there is no standing, Ruggiero argues that he "expelled" Greeley from OGRP, which he claims deprived Greeley of the power to cause OGRP to sue Ruggiero to recover the $1.5 million he owes.

As discussed above in Part II.A, the Court here cannot decide whether Greeley has the right to continue using the name Ohlandt, Greeley, Ruggiero & Perle, LLP unless it decides whether Ruggiero withdrew from OGRP in accordance with Section 1.1 of the Partnership Agreement and whether Ruggiero had authority under the Partnership Agreement to "expel" Greeley as he claims he did. Those are the same issues the Superior Court has already been asked to decide in the two state court cases. The parties already are engaged in jurisdictional discovery in the Superior Court regarding those issues. Thus, if this case were to proceed, it would create piecemeal litigation and a high risk of overlapping and potentially contradictory rulings from this Court and the Superior Court.

This Court cannot decide the issues that Ruggiero has raised in this case without stepping on the toes of the Superior Court and deciding issues that already are before that court in not one but two prior pending lawsuits. Accordingly, the third *Colorado River* factor weighs heavily in favor of abstention and heavily against allowing this case to proceed. *See Telesco v. Telesco Fuel & Masons' Materials, Inc.,* 765 F.2d 356, 363 (2d Cir. 1985) (affirming district court's abstention under *Colorado River* and noting that it would not be "wise to permit plaintiff to start anew in federal court" where there were "not one, but two state court suits raising the same issues asserted in the federal action" and both state court suits commenced before the federal action).

*Fourth Factor.* The fourth factor – the order in which jurisdiction was obtained – also weighs heavily in favor of abstention. The first state court case was filed six months before this case. The second state court case was filed five months before this case. Both cases are well under way. The parties already have engaged in substantial jurisdictional discovery, served and responded to written discovery concerning the jurisdictional issues, and have begun deposing

witnesses. The Superior Court already has scheduled an evidentiary hearing on the jurisdictional motions for the beginning of May.

Because both state court cases were filed months before Ruggiero filed this lawsuit, and because those prior-pending lawsuits are progressing rapidly, the fourth factor weighs heavily in favor of abstention. *See Telesco*, 765 F.2d at 360 (district court considered "well-advanced state court litigation" in contrast to less progressed parallel federal case as a factor weighing towards abstention under *Colorado River*).

*Fifth Factor.* The fifth factor – whether state or federal law supplies the rule of decision – also weighs heavily in favor of abstention. As discussed above in Part II.A, state law supplies the rule of decision in this case. This is not a trademark case. Ruggiero's singular claim is that OGRP and Greeley have no right to continue using the "Ruggiero" name. That question turns on state law. Specifically, as discussed above, Ruggiero is a party to the 1998 Partnership Agreement, which states clearly that the firm's name "shall be" Ohlandt, Greeley, Ruggiero & Perle, LLP and that the firm will remove a partner's name only "upon withdrawal from the LLP." Partnership Agreement § 1.1. Unless and until he has been found to have withdrawn from OGRP—a determination inextricably bound up with his standing to sue in state court—his name is provided *by contract* to OGRP.[4]

Ruggiero cannot simply slap a "Lanham Act" label on contractual issues and claim that federal law decides this case. Indeed, Ruggiero has acknowledged in the present case and throughout the pending state court actions that this naming issue is a creature of contract by

---

[4] Without citing the specific rule, Ruggiero also claims that the continued use of "Ruggiero" violates Connecticut's Rules of Professional Conduct by implying a connection "with a lawyer who is not associated with the firm." Compl. ¶ 29. This is another example of Ruggiero trying to have his cake and eat it too by relying on something that applies only when a lawyer is no longer associated with a firm while at the same time refusing to admit that he has withdrawn from OGRP.

continuously referencing and utilizing § 1.1 of the Partnership Agreement to claim that his name

must be removed from the title of the firm. *See, e.g.*, Compl. ¶ 28. Thus, this fifth factor weighs

heavily in favor of abstention under *Colorado River*.

     *Sixth Factor.* The sixth factor – whether the state court proceeding will adequately protect

Ruggiero's rights – also weighs heavily in favor of abstention. Where, as here, a "Connecticut

resident[], [has] asserted [his] Connecticut claims in a Connecticut court," the party's interests are

adequately protected and the party "cannot be opposed to a final disposition by a state court."

*Ferrara*, 585 B.R. at 296. As discussed above, the right to the use of "Ruggiero" in connection

with Ohlandt, Greeley, Ruggiero & Perle, LLP is squarely before the Superior Court in both prior

pending state court lawsuits. In both cases, the Superior Court will decide whether Ruggiero

withdrew from OGRP and whether he had the power under the Partnership Agreement to

unilaterally "expel" Greeley. The pending state court proceedings will adequately protect

Ruggiero's interests. This sixth factor, therefore, weighs heavily in favor of abstention.

     In addition to the factors discussed above, the Second Circuit has noted that the U.S.

Supreme Court has "found 'considerable merit' in the idea 'that the vexatious or reactive nature of

either the federal or the state litigation may influence the decision whether to defer to a parallel

state litigation under *Colorado River*.'" *Telesco*, 765 F.2d at 363 (emphasis added). That factor

has been invoked, for example, where:

> [T]he same party [was] plaintiff in both courts and sue[d] in the federal court on the
> same cause of action after he ha[d] suffered some failures in the earlier state court
> action. This fact and the hostile history of the case strongly indicate the vexatious
> nature of the litigation. Accordingly, the conservation of judicial resources is a
> factor to be considered in determining the existence of exceptional circumstances
> justifying deference to a parallel state litigation.

*Id.*

Here, the procedural history of the state and federal cases indicate that Ruggiero has run afoul of this principle. In August 2022, OGRP and Greeley sued Ruggiero to recover the approximately $1.5 million he owes and to hold him accountable for the harm he caused to both OGRP and Greeley by trying to drive them out of business as he moved his practice to a new competing firm. In response, Ruggiero did two things. He moved to dismiss the lawsuit, arguing that, under his reading of the Partnership Agreement, he cannot be sued without his consent and that he "expelled" Greeley from OGRP before the suit was filed so Greeley lacked authority to cause OGRP to sue (meaning that no one could hold Ruggiero liable for his debt or actions).

Ruggiero also filed his own lawsuit seeking the judicial dissolution of OGRP, the appointment of a receiver, and a declaratory judgment that Greeley is prohibited from using the OGRP name, website, and domain address. Notably, Ruggiero also *immediately* filed an application for the appointment of a receiver, asking the Court to quickly replace Greeley, who has been Managing Partner of OGRP since its inception, with a receiver. By doing so, Ruggiero sought to drive OGRP to its demise by trying to forcibly remove Greeley, which is something he had been trying to do from the start. Ruggiero, however, was thwarted in his efforts when Greeley moved to dismiss Ruggiero's lawsuit on the ground that Ruggiero had withdrawn from the firm before filing the lawsuit in September 2022 and therefore lacked standing to assert those claims.

Unable to force the issue quickly in state court, Ruggiero has now moved to federal court and is attempting a different tactic to try to achieve the same thing. Under the guise of asking this Court to "protect" clients from confusion, Ruggiero seeks immediate injunctive relief in this Court to prohibit Greeley from continuing to practice law as OGRP. Despite his protestations that this case is different and raises a discrete issue, the reality is that Ruggiero once again is trying to hurry a decision on Greeley's rights to the firm's name and assets.

Given this background, this case raises the same red flags the Second Circuit warned about in *Telesco*. After suffering earlier failures in his own prior-pending state court action, Ruggiero filed this duplicative lawsuit to try to force the issue. Under these circumstances, and in the interests of conserving judicial resources and avoiding needlessly duplicative parallel litigation in two different forums, this Court should abstain from hearing his matter in deference to the Superior Court proceedings.

**C.      At a Minimum, the Court Should Stay This Case.**

At a minimum, the Court should stay this matter to allow the Superior Court to determine if and when Ruggiero withdrew from OGRP and whether the Partnership Agreement gave each partner the authority to unilaterally expel the other partner.

"[A] federal court is not precluded, in the exercise of its discretion, from staying proceedings in the action before it pending a decision by the state court, with a view to avoiding wasteful duplication of judicial resources and having the benefit of the state court's views." *Giulini v. Blessing*, 654 F.2d 189, 193 (2d Cir. 1981) (remanding "with directions to deny declaratory or injunctive relief and to hold the case in abeyance pending final adjudication of the [same] issues by the state courts"); *see also Main St. Am. Assurance Co. v. DRW Properties, LLC*, No. 3:21-CV-00074 (JCH), 2021 WL 5988631, at *6 (D. Conn. Dec. 16, 2021) ("Allowing the state court to reach a determination will avoid unwarranted 'racing' to a determination of liability and prevent unnecessary 'encroaching' into the realm of the state court."); *Price v. Rust*, 527 F. Supp. 569, 572 (D. Conn. 1981) (court exercised equitable restraint, citing principles of comity, to stay federal case attempting to interfere with state case).

A stay here would allow the state court to address the contractual issues that are at the heart of all three cases without interference and would allow this Court to avoid needlessly spending the

Court's time and resources on issues that are already before the Superior Court in two prior-pending cases. Accordingly, if the Court does not dismiss this case pursuant to the *Colorado River* doctrine, it should stay this case in deference to the Superior Court until the state court proceedings have been completed.

## <u>CONCLUSION</u>

For the reasons discussed above, the Court should dismiss, or at a minimum stay, this case.


**DEFENDANT**
**PAUL D. GREELEY**


By:      */s/ Joseph C. Merschman*
Joseph C. Merschman (ct27896)
jmerschman@wiggin.com
Mary A. Gambardella (ct05386)
mgambardella@wiggin.com
Joshua Taylor (ct29720)
jtaylor@wiggin.com
WIGGIN AND DANA LLP
One Century Tower
265 Church Street
New Haven, CT 06510
203-498-4382